**Continuation Of Application For Search Warrant**

I, Cory J. Howe, being duly sworn, depose and state the following:

1. I am a citizen of the United States, residing in Michigan.  I am a Special Agent employed by the U.S. Department of Homeland Security, Homeland Security Investigations (HSI).  I have been so employed by HSI and HSI's legacy agency, U.S. Customs Office of Investigations, since October 2001.  I am an Honor Graduate of the Federal Law Enforcement Training Center.  My responsibilities and duties include the investigation and enforcement of laws and regulations including violations related to the importation and exportation of munitions, contraband and prohibited items.  During my employment with HSI, I have participated in numerous investigations, during the course of which I have conducted physical and electronic surveillance, executed search warrants, interviewed and debriefed witnesses, informants and defendants and reviewed evidence.

2. I make this Continuation in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the further examination and seizure of the property listed in Attachment A, which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. The applied-for warrant would authorize the forensic examination of the item listed in Attachment A for the purpose of identifying electronically stored data particularly described in Attachment B.

3. This Continuation is submitted in connection with an investigation into the following violations:  22 U.S.C. § 2778, which makes it a crime for any person to export defense articles regulated by the Arms Export Control Act from the United States without a license.  Specifically, subjects of this investigation were allegedly involved in utilizing international shipping containers loaded with automobile parts to conceal and facilitate the smuggling of firearms from the United States to Lebanon;  18 U.S.C. § 1956, which makes it a crime for any person to transport, transmit, or transfer, or attempt to transport, transmit, or transfer, monetary instruments or funds from the United States to or through a place outside the United States, or to the United States from or through a place outside the United States, with the intent to promote the carrying on of that specified unlawful activity.

4. The statements contained in this Continuation are based upon my personal observations, training, and experience; my review of relevant records related to this investigation; and information provided to me by other law enforcement officers involved in this investigation.  Because this Continuation is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth the facts that I believe are necessary to establish probable cause to

        believe that evidence, fruits, and instrumentalities related to alleged violations of 22 U.S.C. § 2778 will be found on the device listed in Attachment A.

5. Since approximately June 2014, I have been assigned to the investigation of an international firearms smuggling organization controlled in part by an individual named Gilbert Oscar ELIAN (hereinafter "ELIAN"). Members of this suspected criminal organization are living in the United States and residing elsewhere around the world, to include Lebanon.

6. In June 2014, ATF Grand Rapids received information from a Firearms Multiple Sales Report that Gilbert Oscar Elian had purchased multiple handguns between January 2012 and May 2014. Elian's known firearm purchases came from local retail outlets. Elian was not certified as a licensed firearms dealer.

7. On June 30, 2015, U.S. Customs and Border Protection (CBP) officers in Chesapeake, VA, identified and selected international shipping container # APHU4569814 for an intensive export examination. The shipper of the container was identified as, Gilbert ELIAN, 4960 Hillside Farms Estate Drive, Grand Rapids, Michigan, and the shipping manifest identified the merchandise inside the container as "used auto parts." The shipping manifest listed the cargo weight as being 22,000 kilograms. The value of the merchandise contained inside the container had a value listed as $70,000. The foreign consignee was identified as, ATTCO SARL, 38 Main Road, Beirut, Lebanon. The shipment manifest listed the point of origin for the container as being Ohio.

8. While performing checks on the shipping container, CBP discovered that ELIAN had an active subject database record, which had been created by HSI in Grand Rapids, MI. CBP Officers in Chesapeake, VA contacted Your Affiant on June 30, 2015. Based in part on that conversation and the subject database record, the agents determined that a strong possibility existed that ELIAN may be involved in smuggling firearms out of the United States and HSI requested that CBP search the container # APHU4569814. Shipping Container # APHU4569814 was officially examined in Chesapeake, VA by CBP on July 16, 2015. CBP officers searched the container pursuant to their designated border search authority. Upon examination, CBP officers observed the shipping container to contain automobile parts, to include actual vehicles and vehicle engines. CBP observed unusual bolts in the oil and transmission pans of several of the vehicle engines. The bolts were at an uneven depth and appeared to be of different sizes. The bolts also had noticeable tool marks displayed on them. The oil pans were removed and revealed several disassembled handguns packaged in felt and plastic. An additional examination of the cargo by CBP yielded another engine and separate transmission which exhibited similar characteristics. That engine and transmission were opened and revealed several additional disassembled firearms. CBP officers ultimately searched the entire shipping container and located and seized 20 handguns and 23 firearm magazines.

9. On July 28, 2015, ELIAN was arrested, as he was attempting to flee the United States, for violations related to smuggling goods from the United States. A search warrant was also executed at ELIAN's Michigan residences on this date.

10. On August 25, 2015, ELIAN was indicted in the Western District of Michigan for violation of one count each of 22 U.S.C. § 2778 – Arms Export Control Act; 18 U.S.C. § 554 – smuggling goods from the United States; and 18 U.S.C. § 371 – Conspiracy.

11. On March 25, 2016, ELIAN pleaded guilty in the United States District Court, Western District of Michigan to one count of conspiring to violate the Arms Export Control Act (AECA) contrary to 18 U.S.C. § 371, 22 U.S.C. § 2778(b)(2), and (c), and 22 C.F.R. parts 121, 127.

12. Between the dates of March 14, 2016 and March 2, 2017, HSI, ATF and IRS Criminal Investigation Division (CID) special agents conducted several proffer interviews with ELIAN. During these interviews, ELIAN identified several individuals who conspired with him to illegally smuggle firearms from the United States to Lebanon. One of those individuals was identified as Abdulmajid SAIDI (aka Majid SAIDI) (hereinafter referred to as SAIDI). ELIAN advised he purchased numerous firearms over the past several years and sold the guns to SAIDI and others, who in turn worked together to smuggle the weapons out of the United States to Lebanon using a Cleveland, OH based warehouse. ELIAN identified the Cleveland, OH based warehouse used by SAIDI and others store and ultimately ship the firearms to Lebanon as being AMS International, 3584 W. 67th Street, Cleveland, Ohio 44102. A database check conducted in November 2017 by Your Affiant through the Ohio Secretary of State online database show AMS International is owned by SAIDI.

13. Following ELIAN's arrest on July 28, 2015, investigators searched two of his cellular telephones and discovered numerous text messages sent between ELIAN and SAIDI. The messages sent to from SAIDI were identified by the following phone numbers: 961-398-9498 (identified fully as being: 19613989498@s.whatsapp.netMajid) and 216-632-3232 (identified fully as being: 1216-632-3232@swhatsapp.netMajid).

14. The messages between ELIAN and SAIDI contained numerous pictures and discussions involving firearms transactions between ELIAN and SAIDI. The conversations specifically described ELIAN selling guns to SAIDI. During one of the text message conversations between ELIAN and SAIDI (using phone # 961-398-9498) dated March 9, 2012, ELIAN sends SAIDI a picture of a Desert Eagle pistol with a carrying case that says, "Desert Eagle Pistols, Magnum Research, Made in Israel. SAIDI tells ELIAN in a subsequent message to remove the location of where the pistol was made (Israel) saying, "Man be careful this is made in is. Remove where it is made." ELIAN subsequently sends SAIDI a picture of the pistol case with the words 'Made in Israel' removed from the case.

      ELIAN later explained to investigators that SAIDI required ELIAN to remove the "Israel" verbiage from the case because the gun was being illegally sent to Lebanon, where animosity exists towards Israel.

15. On November 16, 2017, CBP Officer Douglas Prenger searched an online government database and identified phone number 961-398-9498 as being attached to 12 separate international exports that each listed AMS Trading, Majid Saidi, Tripoli, Lebanon as the Ultimate Consignee. Additionally, CBP Officer Douglas Prenger identified phone number 216-632-3232 as being attached to 853 international exports that each listed AMS International, Majid Saidi, 2948 Pease, Apt. 201, Rocky River, Ohio listed as the U.S. Shipper.

16. On November 20, 2017, HSI Special Agents arrested Majid SAIDI (aka Abdulmajid SAIDI) at the Newark Liberty International Airport as he prepared to board United Airways Flight 960 to Frankfurt, Germany. SAIDI's final travel destination was identified as being Beirut, Lebanon. Majid SAIDI was arrested pursuant to a Federal Arrest Warrant issued out of the Western District of Michigan (Court Case # 1:17-MJ-355).

17. On December 19, 2017, a Federal Grand Jury in the Western District of Michigan returned a True Bill of Indictment for Majid SAIDI and a co-defendant in violation of 22 U.S.C. § 2778 (Arms Export Control Act); 18 U.S.C. § 554 (Smuggling Goods from the United States); 18 U.S.C. § 922(a)(1)(a) (Dealing Firearms without a License) and 18 U.S.C. § 1956 (Money Laundering). It was further part of the conspiracy involving Majid SAIDI to secrete and cause to be secreted twenty firearms wrapped in felt and plastic and inserted inside an automobile engine block in or around June 2015, and place those items in a cargo shipping container addressed to a consignee in Beirut, Lebanon.

18. At the time of his arrest on November 20, 2017, SAIDI was in physical possession of one active cellular telephone and two laptop computers. All of the electronic media, described in more detail as being one I-Phone X (described further in "Attachment A" and hereinafter referred to in this Continuation as "THE DEVICE"), one HP Spectre Laptop Computer and one Windows XPS Laptop Computer, were detained by the HSI Newark office on November 20, 2017. THE DEVICE and the two computers were detained by HSI Special Agents in anticipation of a border search of the electronic media contained therein – authorized pursuant to the Border Search Exception under Title 19 of the United States Code. THE DEVICE and the two computers were shipped to HSI Grand Rapids in November 2017. On December 5, 2017, a forensic extraction was completed on THE DEVICE by HSI Grand Rapids Intelligence Research Specialist Ralna Farina. Specialist Farina has received specific training in cellular telephone extraction through CELLEBRITE – a forensic tool for mobile phones.

19. Additionally, the forensic extraction of THE DEVICE on December 5, 2017 revealed two specific phone numbers attached to the Mobile Station International

       Subscriber Directory Number (referred to hereinafter as an "MSISDN") for THE DEVICE. Those telephone numbers are identified as 216-632-3232 and 961-398-9498 and are identical to the numbers originally identified in this Continuation in paragraph # 13. Your Affiant knows through training and experience that an MSISDN identifies specific phone numbers linked to SIM cards used inside cellular telephones.

20. THE DEVICE described in Attachment A has remained in the custody of HSI since it was originally detained on November 20, 2017.

21. Based on training and experience, your affiant knows that cellular telephones have an internal data storage capability that can hold information such as stored voicemails and text messages, contact numbers, e-mail messages, records of incoming and outgoing communications, phone number storage, electronic files, photographs and video images. Cellular telephones automatically store information related to call activity in their memories. This information typically includes data related to the time, date and duration of the calls made and received, as well as the phone numbers called and from which incoming calls were received. This affiant is also aware that cellular phones can retain phone numbers programmed into the user's personal "phone book."

22. Regarding the necessity of obtaining judicial authorization to search a cellular phone, I am informed by the U.S. Attorney's Office for the Western District of Michigan that information regarding phone calls made and received is not "content" within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq. 18 U.S.C. 2510(8) (defining content as information concerning "substance, purport, or meaning of [a] communication"). I am also informed that retrieving such information from a cellular phone does not constitute an "interception" within the meaning of Title III. United States v. Meriwether, 917 F.2d 955, 960 (6th Cir. 1990) (discussing retrieval of call information from a pager). However, the U.S. Attorney's Office has also informed me that there is a growing body of precedent holding that cell-phone owners have a reasonable expectation of privacy under the Fourth Amendment in the information contained in the internal digital files of their cell phones and that, absent a recognized exception to the warrant requirement, court authorization based on probable cause is required to search a cell phone for such information even after the phone is lawfully seized. See United States v. Morales-Ortiz, 376 F. Supp. 2d 1131 (D. N.M. 2004); United States v. Parada, 289 F. Supp. 2d 1291 (D. Kan. 2003); United States v. De La Paz, 43 F. Supp. 2d 370 (S.D.N.Y. 1999). Finally, I am informed that while a cellular phone may be treated as a container and searched incident to arrest, that arrest ends once the administrative process attendant to arrest have been completed. United States v. Finley, 477 F. 3d 250, 260 n. 7 (5th Cir. 2007).

23. Based on the foregoing recitation of facts, and in light of Affiants training and experience, Affiant submits that there is probable cause to believe that the cellular

telephone described in Attachment A contain historical information regarding call activity, "phone book" directory information, stored voice-mails and text messages, and electronic files, photographs, and video images that are evidence of International Arms Trafficking by Majid SAIDI and others.